The petitioner, before the passage of the conscription act, volunteered for the war in a company which Captain Shober was raising in Guilford, put in a substitute for the war, and was discharged; afterwards, notwithstanding his discharge, he was enrolled as a conscript and taken to the Army of Virginia, where he served sixteen months; last fall he came home on sick furlough, refused to return at the expiration of his time, was arrested, and sued out this writ. While in service, he had received pay, clothing, and rations, but had not received bounty.
The enrolling officer insisted that the petitioner being absent from the army without leave, could not be heard to claim a discharge until his offense was disposed of by a court-martial, and relied on Graham'scase, 53 N.C. 416. In my opinion, that case does not apply. Graham entered the army by enlistment before he was 21 years of age, and being under arrest for some collateral offense, sued out a writ, seeking to avoid his contract of enlistment on the ground of infancy. It was held that he could not be heard until the offense for which he was under arrest was disposed of by court-martial. Graham went into service voluntarily, and was rightfully a soldier until the contract was avoided; his offense was a collateral act, having no connection with the validity of his enlistment. The petitioner was taken to the army against his consent; the matter, as he alleges, was void "ab initio"; the supposed (376) offense grows out of and depends on the question whether he was rightfully a soldier or not; and that is the point put at issue by this proceeding. It would be strange if the Court, before it can try the question, is required to assume, in favor of the Government, that the petitioner is rightfully a soldier, and on that ground to remand him to be tried before a court-martial for an act the character of which depends on that very question! "No one shall take advantage of his own wrong" is a maxim of law. Suppose the petitioner was not liable to conscription, the act of the Government was wrongful, and his act in leaving the army in order to assert his right before a judicial tribunal of his *Page 240 
country is justifiable, because made necessary by the first wrongful act of the Government. To refuse to hear him would be to enable the Government to take advantage of its own wrong, and amount to a denial of justice. See how it would work: a man leaves the army, comes home and appeals to a court to try the question whether he is rightfully a soldier or not; the court refuses to hear him; he is sent back to the army in Virginia, tried by a court-martial as a deserter, and executed to deter others from like acts; that is the end of it. Or suppose he is punished, and allowed to live: he is without remedy in the courts of his country, because beyond the reach of their process. Will it be said this denial of justice is necessary for the good of the public service to prevent desertion? God forbid! "Fiat justitia, ruat coelum," let justice be done without regard to consequences! The case of Dixon is direct authority for the petitioner on this preliminary question. (See referenceIn re Guyer, ante,66.) Dixon was under 35 years of age, a blacksmith, taken as a conscript and serving in the army when the exemption act passed; served several months, received bounty, pay, clothes, and (377) rations; came home on furlough, refused to return, and was arrested as a deserter, and sued out the writ on the ground that he was not rightfully a soldier. On the preliminary question the two learned gentlemen who appeared for the Government did not rely on the case of Graham as applicable; and the Court considered that he was not precluded from being heard on the merits by the fact that he was absent without leave, but went into the merits, and decided against him. I have a distinct recollection, although I do not remember the names of the cases, that in looking over "Hurd on Habeas Corpus," in reference to this preliminary question, he cites several cases in which an alleged deserter was heard on the merits, taking the distinction between the cases where the enlistment is alleged to be void, as in this case, and where it is alleged to be voidable, as in the case of Graham. So, both upon "the reason of the thing" and upon authority, I decide the preliminary question in favor of the petitioner.
On the merits, according to the decision of the Supreme Court inRitter's case, ante, 76, the petitioner was not liable to conscription, and I learn the enrolling officer refused to exempt him, because he had special instructions not to regard the decisions of the Supreme Court unless the party had been discharged on writ of habeas corpus. On the question ofwaiver: do the facts, that he receives pay, clothing, rations, and serves sixteen months, make him liable to serve for the war? He insists that the Government would thereby take advantage of its own wrong. The enrolling officer insists that these facts amount in law to a waiver of his original right growing out of the substitution, and relies on Dixon's case. In that case the point is not positively decided, there *Page 241 
being another ground, to wit, that as he was in service, the exemption act does not embrace his case. But I know the judges were of opinion that when all of these facts exist, to wit, receipt of bounty, pay, clothing, rations, and service, there is a waiver of a right to exemption, and I have accordingly, on that ground, remanded the parties in three other cases.
But In re Fleming, who was arrested as a conscript and, (378) without an opportunity to sue out a writ, taken to Camp Holmes, sent to Richmond, and then to Staunton, where he left the army without leave, came home and was arrested as a deserter, I had General Hoke notified, and it being objected that, as he was a deserter, he could not be heard until a court-martial had disposed of him, I overruled the objection for the reason above stated, and on the authority of In re Dixon. On the merits, it appeared that he was over 35, and the keeper of a public mill, and had been refused exemption on the ground that he attended to a sawmill as well as a gristmill! I held that position untenable. On the question of waiver, it appeared that he had been under military restraint for three weeks, had received rations, and drilled a time or two. I held there was no evidence of a waiver — he was obliged to eat and forced to drill, and it was bad enough that he had been put in jail, taken off, tied like a felon, and restrained of his liberty for three weeks against law. In the matter of ............... (I forget the name) the petitioner was a blacksmith, had been detailed, was afterwards taken as a conscript to Virginia, kept there three months, most of the time in the hospital, sent home on a sick furlough, and refused to return. I overruled the preliminary objection. On the merits, I held he was exempted according to Guyer's case, and as to waiver, that the additional circumstance of receiving clothes did not vary the case from that of Fleming; clothes were necessary and he was required to be in uniform.
In this case, there are the additional facts of receiving pay and serving sixteen months. As to pay, two considerations bear on the matter: a soldier is, in many cases, obliged to draw for his own comfort and the support of his wife and children in his absence. The (379) pay is only an equivalent for services rendered, and, consequently, cannot be the foundation for an implication of a waiver or consent to serve for the war; as to the sixteen months service, it would seem the Government should be content with having exacted that much out of him, and can on no principle make it the ground for forcing him to serve during the war. The case differs from that of In re Dixon in this: no bounty was received, which is the most material and unequivocal evidence of a waiver; it is a voluntary act, inconsistent and against conscience, except on the supposition that the party is to serve out the whole time as a conscript; and for that reason the Court in Dixon's case *Page 242 
considered this fact, connected with and propped by the other facts, evidence of a waiver or consent to serve for the war. The acceptance of bounty is so important a fact that a case cannot be made out without it; it would be like an arch without a keystone, or acting the play of Hamlet with the character of Hamlet omitted.
It is, therefore, considered that the petitioner be discharged.
December, 1863.
NOTE. — Vide Gatlin v. Walton, ante, 333.